UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CLEVELAND HAWKINS,

                                        Plaintiff,

                                                        9:06-CV-1518
v.                                                      (NAM/GHL)

ANDREW SHAPIRO, M.D.,

                                        Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CLEVELAND HAWKINS, 04-A-3621
Plaintiff *pro se*
Coxsackie Correctional Facility
Box 999
Coxsackie, NY 12051

HON. ANDREW M. CUOMO                            DOUGLAS J. GOGLIA, ESQ.
Attorney General for the State of New York
  Counsel for Defendant
The Capitol
New York, NY 12224

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

        This *pro se* prisoner civil rights action, commenced pursuant to 42 U.S.C. § 1983, has

been referred to me for Report and Recommendation by the Honorable Norman A. Mordue,

Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

Plaintiff Cleveland Hawkins alleges that Defendant Andrew Shapiro, a podiatric surgeon

practicing under a contract with the New York State Department of Correctional Services

("DOCS"), violated his rights under the Eighth Amendment and New York state law.  Currently

pending before the Court is Defendant's motion for summary judgment pursuant to Federal Rule

of Civil Procedure 56.  (Dkt. No. 32.)  For the reasons that follow, I recommend that Defendant's

motion be granted. **I.  APPLICABLE LEGAL STANDARDS**

**A.   Legal Standard Governing Motions for Summary Judgment**

Under Federal Rule of Civil Procedure 56, summary judgment is warranted if "the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether

a genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all

reasonable inferences against the moving party.[2]

When the moving party has met its initial burden of establishing the absence of any

genuine issue of material fact, the nonmoving party must come forward with "specific facts

showing that there is a genuine issue for trial."[3]  The nonmoving party must do more than "rest

upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some

---

[1]       A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[2]       *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[3]       Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff].");  *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

metaphysical doubt as to the material facts."[4]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

Any verified complaint filed by the plaintiff should be treated as an affidavit.[6]  (Here, I note that Plaintiffs' complaint is verified pursuant to 28 U.S.C. § 1746.)  That having been said, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit (or verified complaint) must, among other things, be based "on personal knowledge."[7]  An affidavit (or verified complaint) is not based on personal knowledge if, for example, it is based on mere "information and belief" or hearsay.[8]  In addition, such an affidavit (or verified

---

[4]        *Matsushita*, 475 U.S. at 585-86; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . .").

[5]        *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[6]        *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[7]        Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[8]        *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . . [Furthermore, the Rule's] requirement that the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavits also means that the affidavit's

3

complaint) must not be conclusory.[9]  An affidavit is conclusory if, for example, its assertions lack

any supporting evidence or are too general.[10]  Finally, even where an affidavit (or verified

complaint) is nonconclusory, it may be insufficient to create a factual issue where it possesses the

following two characteristics: (1) it constitutes almost the sole or exclusive basis for a disputed

issue of fact in the case (or, expressed differently, it is largely unsubstantiated by any other direct

evidence); and (2) it is so lacking in credibility that, even after drawing all inferences in the light

---

hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient
to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d
Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon
information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's]
affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is
insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top
Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor
and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting
affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[9]        *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor
is a genuine issue created merely by the presentation of assertions [in an affidavit] that are
conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970)
(stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for
summary judgment from degenerating into mere elaboration of conclusory pleadings").

[10]        *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute
between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759
F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about
Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was
conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S.
829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit]
with the characters and plot line for a novel of intrigue rather than the concrete particulars which
would entitle him to a trial.").

most favorable to the non-movant, no reasonable jury could find for the non-movant because the testimony is incomplete and/or replete with inconsistencies and improbabilities.[11]

**B.     Legal Standard Governing Motion to Dismiss for Failure to State a Claim**

To the extent that a defendant's motion for summary judgment under Federal Rule of Civil Procedure 56 is based entirely on a plaintiff's complaint, such a motion is functionally the same as a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  As a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d 270, 273-74 (2d Cir. 1968) [citations omitted]; *accord, Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56

---

[11]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) ("[I]n the rare circumstances where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether . . . there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account. . . .  In the circumstances presented in the instant case-where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that no reasonable person could believe Jeffreys' testimony, . . . we hold that the District Court did not err by awarding summary judgment.  Because no reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in the complaint, . . . conclude that summary judgment was appropriate.") [internal quotation marks and citations omitted]; *cf. Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 42-46 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line [1] was "unsupported by documentary or other concrete evidence," and indeed was contradicted by the other record evidence, and [2] was "conclusory" and "inconsistent" with plaintiffs' present representations); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612-15 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony [1] recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign," and [2] were inconsistent with plaintiff's other statements and claims), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

summary judgment motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or

without notice to the parties.").  Moreover, even where a defendant has not advanced such a

failure-to-state-a-claim argument on a motion for summary judgment, a district court may, *sua*

*sponte*, address whether a *pro se* prisoner has failed to state a claim upon which relief may be

granted.[12]  For these reasons, it is appropriate to briefly summarize the recently clarified legal

standard governing motions to dismiss.

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a

complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P.

12(b)(6).  It has long been understood that a defendant may base such a motion on either or both

of two grounds: (1) a challenge to the "sufficiency of the pleading" under Federal Rule of Civil

---

[12]      The authority to conduct this *sua sponte* analysis is derived from two sources: (1)
28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a
prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . .
is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . .
seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. §
1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's]
complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to
state a claim upon which relief may be granted . . . ."

Procedure 8(a)(2);[13] or (2) a challenge to the legal cognizability of the claim.[14]

Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Rule 8(a)(2) requires that the pleading contain a short and plain statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds

---

[13]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[14]     *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

upon which it rests."[15]  The main purpose of this rule is to "facilitate a proper decision on the

merits."[16]  A complaint that fails to comply with this rule "presents far too heavy a burden in

terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis

for the Court to assess the sufficiency of [plaintiff's] claims."[17]

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2)

as "simplified" and "liberal," and has repeatedly rejected judicially established pleading

requirements that exceed this liberal requirement.[18]  However, it is well established that even this

---

[15]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

[16]     *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

[17]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[18]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

liberal notice pleading standard "has its limits."[19]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[20]

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69[21] (2007).[22]

---

[19]    2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[20]    *See*, *e.g.*, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See*, *e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

[21]    All citations to the *Bell Atlantic* decision will be to the S.Ct. cite rather than the U.S. cite because page numbers are not available for the U.S. version.

[22]    The Court in *Bell Atlantic* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . .  *Conley*, then, described the breadth of opportunity to prove what an adequate

Rather than turning on the *conceivability* of an actionable claim, the Court clarified, the Rule 8 "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74.

More specifically, the Court reasoned that, by requiring that a pleading "show[] that the pleader is entitled to relief," Rule 8(a)(2) requires that the pleading give the defendant "fair notice" of (1) the nature of the claim and (2) the "grounds" on which the claim rests. *Id*. at 1965, n.3 [citation omitted]. While this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. [citations omitted]. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*. at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id*.

As have other Circuits, the Second Circuit has repeatedly recognized that the clarified plausibility standard that was articulated by the Supreme Court in *Bell Atlantic* governs *all* claims, not merely antitrust claims brought under 15 U.S.C. § 1 (as were the claims in *Bell Atlantic*).[23] The Second Circuit has also recognized that this *plausibility* standard governs claims

---

complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic*, 127 S. Ct. at 1969.

[23]      *See, e.g., Ruotolo v. City of New York,* 514 F.3d 184, 188 (2d Cir. 2008) (in civil rights action, stating that "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted]; *Goldstein v. Pataki*, 07-CV-2537, 2008 U.S. App. LEXIS 2241, at *14 (2d Cir. Feb. 1, 2008) (in civil rights action, stating that "*Twombly* requires . . . that the complaint's '[f]actual allegations be enough to raise a right to relief above the speculative level . . . .'") [internal citation omitted]; *ATSI Commc'ns, Inc.*

brought even by *pro se* litigants (although the plausibility of those claims is be assessed

generously, in light of the special solicitude normally afforded *pro se* litigants).[24]

It should be emphasized that Rule 8's plausibly standard, explained in *Bell Atlantic*, was

in no way retracted or diminished by the Supreme Court's decision (two weeks later) in *Erickson*

*v. Pardus*, in which the Court stated, "Specific facts are not necessary" to successfully state a

claim under Fed. R. Civ. P. 8(a)(2).  *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) [citation

omitted].  That statement was merely an abbreviation of the often-repeated point of law–first

offered in *Conley* and repeated in *Bell Atlantic*–that a pleading need not "set out in detail the

facts upon which [the claim is based]" in order to successfully state a claim.  *Bell Atlantic*, 127 S.

Ct. 1965, n.3 (citing *Conley v. Gibson*, 355 U.S. 41, 47 [1957]).  That statement in no way meant

that all pleadings may achieve the requirement of giving a defendant "fair notice" of the nature of

the claim and the "grounds" on which the claim rests without ever having to allege any facts

---

*v. Shaar Fund, Ltd.*, 493 F.3d 87, 98, n.2 (2d Cir. 2007) ("We have declined to read Twombly's flexible 'plausibility standard' as relating only to antitrust cases.") [citation omitted]; *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (in prisoner civil rights action, stating, "[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

[24]        *See*, *e.g.*, *Jacobs v. Mostow*, 281 F. App'x 85, 87 (2d Cir. March 27, 2008) (in pro se action, stating, "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim to relief that is plausible on its face.'") [citation omitted] (summary order, cited in accordance with Local Rule 32.1[c][1]); *Boykin v. KeyCorp.*, 521 F.3d 202, 215-16 (2d Cir. 2008) (finding that borrower's *pro se* complaint sufficiently presented a "*plausible* claim of disparate treatment," under Fair Housing Act, to give lenders fair notice of her discrimination claim based on lenders' denial of her home equity loan application) [emphasis added].

whatsoever.[25]  There must still be enough facts alleged to raise a right to relief above the

speculative level to a plausible level, so that the defendant may know what the claims are and the

grounds on which they rest (in order to shape a defense).

Having said all of that, it should also be emphasized that, "[i]n reviewing a complaint for

dismissal under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the

---

[25]        For example, in *Erickson*, a district court had dismissed a *pro se* prisoner's civil
rights complaint because, although the complaint was otherwise factually specific as to how the
prisoner's hepatis C medication had been wrongfully terminated by prison officials for a period of
approximately 18 months, the complaint (according to the district court) failed to allege facts
plausibly suggesting that the termination caused the prisoner "substantial harm."  127 S. Ct. at
2199.  The Supreme Court vacated and remanded the case because (1) under Fed. R. Civ. P. 8
and *Bell Atlantic*, all that is required is "a short and plain statement of the claim" sufficient to
"give the defendant fair notice" of the claim and "the grounds upon which it rests," and (2) the
plaintiff had alleged that the termination of his hepatitis C medication for 18 months was
"endangering [his] life" and that he was "still in need of treatment for [the] disease."  *Id.* at 2200.
While *Erickson* does not elaborate much further on its rationale, a careful reading of the decision
(and the dissent by Justice Thomas) reveals a point that is perhaps so obvious that it did not need
mentioning in the short decision: a claim of deliberate indifference to a serious medical need
under the Eighth Amendment involves two elements, i.e., the existence of a sufficiently serious
medical need possessed by the plaintiff, and the existence of a deliberately indifferent mental
state possessed by prison officials with regard to that sufficiently serious medical need.  The
*Erickson* decision had to do with only the first element, not the second element.  *Id.* at 2199-
2200.  In particular, the decision was merely recognizing that an allegation by a plaintiff that,
during the relevant time period, he suffered from hepatis C is, in and of itself, a factual allegation
plausibly suggesting that he possessed a sufficiently serious medical need; the plaintiff need not
*also* allege that he suffered an independent and "substantial injury" as a result of the termination
of his hepatis C medication.  *Id.*  This point of law is hardly a novel one.  For example, numerous
decisions, from district courts within the Second Circuit alone, have found that suffering from
hepatitis C constitutes having a serious medical need for purposes of the Eighth Amendment.
*See, e.g., Rose v. Alvees*, 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004);
*Verley v. Goord*, 02-CV-1182, 2004 WL 526740, at *10 n.11 (S.D.N.Y. Jan. 23, 2004); *Johnson
v. Wright*, 234 F. Supp.2d 352, 360 (S.D.N.Y. 2002); *McKenna v. Wright*, 01-CV-6571, 2002
WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord*, 99-CV-3208, 2000 WL
760751, at *9 (S.D.N.Y. June 13, 2000).

complaint as true and construe all reasonable inferences in the plaintiff's favor."[26]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[27]  In other words, while all pleadings are to be construed liberally under Rule 8(e), *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[28]  Moreover, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that

_____

[26]        *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[27]        *Hernandez*, 18 F.3d at 136 [citation omitted]; *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

[28]        "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) [citations omitted], *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) [citations omitted].

they suggest."[29]  Furthermore, when addressing a *pro se* complaint, *generally* a district court

"should not dismiss without granting leave to amend at least once when a liberal reading of the

complaint gives any indication that a valid claim might be stated."[30]  Of course, an opportunity to

amend is not required where the plaintiff has already amended his complaint.[31]  In addition, an

opportunity to amend is not required where "the problem with [plaintiff's] causes of action is

substantive" such that "[b]etter pleading will not cure it."[32]

---

[29]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's
conclusory allegations of a due process violation were insufficient) [internal quotation and
citation omitted].

[30]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) [internal quotation and
citation omitted]; *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when
justice so requires").

[31]     *Yang v. New York City Trans. Auth.*, 01-CV-3933, 2002 WL 31399119, at *2
(E.D.N.Y. Oct. 24, 2002) (denying leave to amend where plaintiff had already amended
complaint once); *Advanced Marine Tech. v. Burnham Sec ., Inc.*, 16 F.Supp. 2d 375, 384
(S.D.N.Y.1998) (denying leave to amend where plaintiff had already amended complaint once).

[32]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation
omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of
course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint
should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice)
[citation omitted]; *see, e.g.*, *See Rhodes v. Hoy*, 05-CV-0836, 2007 WL 1343649, at *3, 7
(N.D.N.Y. May 5, 2007) (Scullin, J., adopting Report-Recommendation of Peebles, M.J.)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the error
in his complaint–the fact that plaintiff enjoyed no constitutional right of access to DOCS'
established grievance process–was substantive and not formal in nature, rendering repleading
futile); *Thabault v. Sorrell*, 07-CV-0166, 2008 WL 3582743, at *2 (D. Vt. Aug. 13, 2008)
(denying *pro se* plaintiff opportunity to amend before dismissing his complaint because the errors
in his complaint–lack of subject-matter jurisdiction and lack of standing–were substantive and
not formal in nature, rendering repleading futile); *Hylton v. All Island Cob
Co.*, 05-CV-2355, 2005 WL 1541049, at *2 (E.D.N.Y. June 29, 2005) (denying *pro se* plaintiff
opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because
the errors in his complaint–which included the fact that plaintiff alleged no violation of either the
Constitution or laws of the United States, but only negligence–were substantive and not formal in
nature, rendering repleading futile); *Sundwall v. Leuba*, 00-CV-1309, 2001 WL 58834, at *11 (D.

However, while this special leniency may somewhat loosen the procedural rules governing the form of pleadings (as the Second Circuit very recently observed),[33] it does not completely relieve a *pro se* plaintiff of the duty to satisfy the pleading standards set forth in Rules 8, 10 and 12.[34]  Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Rules 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[35]  Stated more plainly, when a plaintiff is proceeding *pro se*,

---

Conn. Jan. 23, 2001) (denying *pro se* plaintiff opportunity to amend before dismissing his complaint arising under 42 U.S.C. § 1983 because the error in his complaint–the fact that the defendants were protected from liability by Eleventh Amendment immunity–was substantive and not formal in nature, rendering repleading futile).

[33]      *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

[34]      *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[35]      *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . .  we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply

"all normal rules of pleading are not absolutely suspended."[36]

## II.    BACKGROUND

### A.    Summary of Plaintiff's Complaint

Plaintiff alleges that on October 24, 2006, Defendant operated on two toes on Plaintiff's right foot.  (Dkt. No. 1 at ¶ 9.)  Plaintiff alleges that Defendant performed the surgery "in a[] non-forensic unsanitary environment i.e. Physical Therapy Room Number 148 adjacent tre[a]dmill, exer[c]ise bike and step machine - operating over a [] waste paper basket with a[] plastic bag in it."  *Id*.

When Plaintiff entered the room for the operation, Defendant instructed Plaintiff to sign a contract, remove his shoes, and lie on his back.  (Dkt. No. 1 at ¶ 9.)  Defendant used a needle to inject a local anaesthetic into Plaintiff's toes.  *Id*.  After checking Plaintiff's toes for numbness, Defendant operated on the toes.  *Id*.

After the surgery, Defendant bandaged Plaintiff's toes.  (Dkt. No. 1 at ¶ 9.)  He then "issued Plaintiff [a] medical sandal [three] sizes too small ... When Plaintiff asked for a larger one Defendant Shapiro said it was all Plaintiff would receive."  *Id*.  Defendant "failed to properly advise and instruct Plaintiff concerning post-operative care and procedure."  (Dkt. No. 1 at ¶ 10.)

After the surgery, "Plaintiff was made to wear bandages that were very bloody and were never changed.  Plaintiff was told that he had to go to sick call in order to get new bandages.  As a result, [P]laintiff's foot got very infected and his toes turned black."  (Dkt. No. 1 at ¶ 9.)

---

with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[36]        *Stinson v. Sheriff's Dep't of Sullivan Cty*., 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980).

Plaintiff alleges that Defendant performed the operation "to explore medical hunches and milk the state for additional funds through billing."  (Dkt. No. 1 at ¶ 9.)

Plaintiff alleges that as a result of Defendant's actions, his third toe has "clicking and pain with every step," his fourth toe is partially paralyzed,  he has a constant sense of numbness, and his normal gait has been disrupted.  (Dkt. No. 1 at ¶ 9.)  He further alleges that, as a result of his injuries, he "was compelled to remain away from his usual duties and vocation."  (Dkt. No. 1 at ¶ 11.)

In his prayer for relief, Plaintiff requests (1) a declaration that Defendant violated Plaintiff's Eighth Amendment rights and committed medical malpractice under state law; (2) an injunction requiring the Commissioner of DOCS to "[i]nstitute and enforce [c]riminal [p]roceedings against any and all DOCS employees who purposely use inmates as human guinea pigs [or] engage in the practice of medical procedures not proven to be []effective" and institute sensitivity training for all employees at Eastern New York Correctional Facility"; (3) $2,000,000 in compensatory damages; (4) $100,000 in punitive damages; and (5) attorney's fees.  (Dkt. No. 1.)

**B.**      **Summary of Grounds in Support of Defendant's Motion**

On August 8, 2008, Defendant moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. No. 32.)  Defendant argues that: (1) he is entitled to summary judgment because he was not deliberately indifferent to any serious medical need; and (2) he is entitled to qualified immunity.

**C.**      **Summary of Plaintiff's Response to Defendant's Arguments**

In response, Plaintiff argues that (1) Defendant should have used a general anesthetic

rather than a local anesthetic during the operation because Plaintiff is a paranoid schizophrenic prone to psychotic episodes[37]; (2) Defendant intentionally hurt him because Plaintiff teased him about the performance of his college's basketball team; and (3) a post-operative infection, which Plaintiff attributes in part to the small surgical shoe Defendant gave him and in part to the fact that his bandages were never changed, caused Plaintiff's sutures to pop out five days after the operation.  (Dkt. No. 37.)

## III.   ANALYSIS

Plaintiff claims that Defendant violated his rights under the Eighth Amendment.  (Dkt. No. 1.)  To prevail on an Eighth Amendment claim of inadequate medical care, a plaintiff must show two things: (1) that the plaintiff had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

Defendant correctly argues that, to the extent that Plaintiff's claim is based on his foot condition, Plaintiff's condition was insufficiently serious for Eighth Amendment purposes.  To be sufficiently serious for purposes of the Constitution, a medical condition must be "a condition of urgency, one that may produce death, degeneration, or extreme pain."  *Nance v. Kelly,* 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) [citations omitted], *accord*, *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1996), *cert. denied*, 513 U.S. 1154 (1995); *Chance*, 143 F.3d at 702.  Here, Plaintiff suffered from "hammer toe."  (Dkt. No. 32-2 at ¶ 14; Dkt. No. 37-4 at ¶ 14.)  The term "hammer toe" refers to a deformity of the second, third, fourth or fifth toe, in which the

---

[37]     Plaintiff states, for instance, that Defendant's "form changed into a hideous demon" during the operation.  (Dkt. No. 37-3 at B-2.)

metatarsophalangeal or "MTP" joint (the first joint in the toe) is cocked upward and the proximal

interphalangeal or "PIP" joint (the middle joint) bends downward, such that the toe rests on its

tip and resembles a hammer.   (Shapiro Decl. at ¶ 5.)  Such a condition is not one "of urgency,

one that may produce death, degeneration, or extreme pain."  *Nance,* 912 F.2d at 607.  *See Veloz*

*v. New York*, 35 F. Supp. 2d 305 (S.D.N.Y. 1999)(fracture fragment, bone cyst, and degenerative

arthritis in the toe not sufficiently serious under the Eighth Amendment, even where surgery was

performed that caused prisoner to have problems walking, pain, and cramping); *Abney v.*

*McGinnis*, 01 Civ. 8444, 2007 U.S. Dist. LEXIS 23180 (S.D.N.Y. Mar. 16, 2007) (inmate's foot

problems, including hammer toes, bunions, collapsed arches, unerect heels, and laterally drifted

big toes were not sufficiently serious); *Hernandez v. Goord*, No. 02 Civ. 1704, 2006 U.S. Dist.

LEXIS 52069, at *18-19 (S.D.N.Y. July 28, 2006) (painful hammer toe with an overlap did not

meet objective prong of the deliberate indifference standard); *Brown v. DeFrank*, 06 Civ. 2235,

2006 U.S. Dist. LEXIS 83345, at *68 (S.D.N.Y. Nov. 15, 2006) (pain from bunions not

sufficiently serious); *McKinnis v. Williams*, 00 Civ. 8357, 2001 U.S. Dist. LEXIS 10979

(S.D.N.Y. Aug. 1, 2001) (injury to inmate's toe did not rise to the level of "serious medical

need."); *Chatin v. Artuz*, 95 Civ. 7994, 1999 U.S. Dist. LEXIS 11918 (S.D.N.Y. Aug. 4, 1999)

(tendonitis and bone spur in foot not sufficiently serious); *Cole v. Scully*, 1995 U.S. Dist. LEXIS

5127 (S.D.N.Y. Apr. 15, 1995) (bunion deformity was not a condition of urgency that could

produce death, degeneration, or extreme pain), aff'd 89 F.3d 826 (2d Cir. 1995)[38].

Even if Plaintiff's hammer toes were a sufficiently serious medical condition for Eighth

---

[38]     Defendant cited each of these cases in his memorandum of law and, in accordance
with Local Rule 7.1(a)(1), served copies of the unpublished cases on Plaintiff.

Amendment purposes, the evidence before the Court does not raise a triable issue of material fact that Defendant was deliberately indifferent to that need.  Medical mistreatment rises to the level of deliberate indifference only when it "involves culpable recklessness, i.e., an act or a failure to act . . . that evinces 'a conscious disregard of a substantial risk of serious harm.'" *Chance*, 143 F.3d, 698, 703 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  Thus, to establish deliberate indifference, an inmate must prove, that (i) a prison medical care provider was aware of facts from which the inference could be drawn that the inmate had a serious medical need, and (ii) that the medical-care provider actually drew that inference.  *Farmer*, 511 U.S. at 837; *Chance*, 143 F.3d at 702-703. The inmate then must establish that the provider consciously and intentionally disregarded or ignored that serious medical need.  *Farmer*, 511 U.S. 825, 835; *Ross v. Giambruno*, 112 F.3d 505 (2d Cir. 1997). An "inadvertent failure to provide adequate medical care" does not constitute "deliberate indifference."  *Estelle*, 429 U.S. at 105-06.  Moreover, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim . . . under the Eighth Amendment."  *Id.*  Stated another way, "medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.; Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) ("Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation.").  Here, Plaintiff alleges that Defendant was deliberately indifferent because he performed the operation "in a[] non-forensic unsanitary environment i.e. Physical Therapy Room Number 148 adjacent tre[a]dmill, exer[c]ise bike and step machine - operating over a [] waste paper basket with a[] plastic bag in it."  (Dkt. No. 1 at ¶ 9.)  The undisputed evidence, however, shows that the

20

environment was sanitary.  Defendant scrubbed Plaintiff's  right foot for several minutes with a

betadine brush, rinsed it with sterile water, and painted it with betadine solution using sterile

technique.  (Dkt. No. 32-2 at ¶ 30; Dkt. No. 37-4 at ¶ 30.)  Sterile materials from Defendant's

office, which included single use drapes, gown, gloves, gauze, instruments and sutures, were then

opened.  *Id*.  at ¶ 31.  Defendant scrubbed and gowned and gloved himself.  *Id*. at ¶ 32.

Defendant sterile-draped Plaintiff' right lower extremity to expose only Plaintiff's forefoot.  *Id.*

at ¶ 33.  Plaintiff's left leg and foot were completely covered with a second sterile drape, and a

third drape was employed to cover the instrument stand, which provided a divider between the

sterile surgical field and non-sterile areas.  *Id.*  at ¶ 34.  A second sterile betadine paint was then

applied.  *Id.* at ¶ 35.  Thus, even if one assumes that Plaintiff's medical condition was sufficiently

serious, the undisputed evidence does not raise a triable issue of material fact that Defendant was

deliberately indifferent to that condition.

 Plaintiff also claims that Defendant was deliberately indifferent to Plaintiff's foot

condition because he gave him a medical shoe that was too small.  (Dkt. No. 1 at ¶ 9.)  Even if

one assumes that Plaintiff's foot condition was sufficiently serious for Eighth Amendment

purposes, there is no triable issue of material fact that Defendant exhibited deliberate indifference

to that need by providing a small post-operative shoe.  It is undisputed that Defendant directed

that Plaintiff be provided with a larger post-operative shoe.  (Dkt. No. 32-2 at ¶ 40; Dkt. No. 37-4

at ¶ 40.)

 The evidence before the Court does not raise a triable issue of material fact that

Defendant was deliberately indifferent to Plaintiff's alleged post-operative infection.  The

undisputed facts show that the first weeks of Plaintiff's post-operative progress were followed by

Plaintiff's primary-care physician, not by Defendant.  (Dkt. No. 32-4 at ¶ 25; Dkt. No. 32-5, Ex. J.)  On November 6, 2006, there was swelling and discoloration in Plaintiff's toes, but the wounds were healed and no opening or drainage was noted.  (Dkt. No. 32-5, Ex. J.)  Plaintiff's primary care physician prescribed antibiotics, but did not contact Defendant regarding any problems.  (Dkt. No. 32-4 at ¶ 25; Dkt. No. 32-5, Ex. J.)  A November 6, 2006, x-ray showed "satisfactory post surgical findings."  (Dkt. No. 32-5, Ex. H.)  Plaintiff did not see Defendant again until November 17, 2006.  (Dkt. No. 32-5, Ex. I.)  At that time, no signs or symptoms of infection were evident, although Plaintiff reported that the toes had previously been "red and draining."  (Dkt. No. 32-2 at ¶ 45; Dkt No. 32-5, Ex. I.)  Thus, the undisputed facts show that Defendant was never aware of any post-operative infection.  Accordingly, there is no triable issue of material fact that Defendant was deliberately indifferent to a post-operative infection.

In his opposition to the motion for summary judgment, Plaintiff for the first time alleges that Defendant was deliberately indifferent to Plaintiff's mental illness.  Courts are under a duty to liberally construe *pro se* pleadings as asserting all legal theories supported by the facts.  *See McEachin v. McGuinnis*, 357 F.3d 197, 199 n.2 (2d Cir. 2004).  Here, however, Plaintiff's allegation regarding his mental illness is not even remotely alluded to in the complaint.  Thus, this is not a situation where Plaintiff has simply failed to specifically identify the correct legal predicate for a claim.  *Compare McEachin* (considering Religious Land Use and Institutionalized Persons Act claim although not raised in complaint, because facts in complaint supported RLUIPA claim)*; Smith v. Nuttal,* No. 04-CV-0200, 2007 WL 837111 at *3 & n. 5 (W.D.N.Y. Mar. 14, 2007) ("Although Plaintiff does not specifically identify RLUIPA as a legal predicate for his § 1983 claim, given Plaintiff's pro se status and the RLUIPA's applicability to Plaintiff's

22

claim, the court construes the Complaint as asserting a violation of the RLUIPA").  Therefore, it is recommended that the Court not consider this belatedly asserted claim.

In light of my finding that summary judgment is appropriate as to Plaintiff's constitutional claim, I recommend that the Court decline to exercise jurisdiction over Plaintiff's pendent state law claim.  28 U.S.C. § 1367(c)(3).

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendant's motion for summary judgment (Dkt. No. 32) be **GRANTED**.

**ANY OBJECTIONS to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation (unless the third calendar day is a legal holiday, in which case add a fourth calendar day)**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y. L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but was not, presented to the Magistrate Judge in the first instance.**[39]

---

[39]     *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18 n.8 (S.D.N.Y. Sept. 30, 1993) (declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421,

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: March 12, 2009
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

---

1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638-39 (9th Cir. 1988) ("[A]llowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act."), *overruled on other grounds by U.S. v. Hardesty*, 977 F.2d 1347 (9th Cir. 1992); *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].